UNITED STATES of America,
Plaintiff,

v.

INTERNATIONAL BOXING CLUB OF NEW YORK, INC., a corporation of New York; International Boxing Club, a corporation of Illinois; Madison Square Garden Corporation, a corporation of New York; James D. Norris; and Arthur M. Wirtz, Defendants.

United States District Court
S. D. New York.

Nov. 16, 1959.

Robert A. Bicks, Asst. Atty. Gen. (William J. Elkins and Edward F. Corcoran, Dept. of Justice, New York City, of counsel), for plaintiff.

Simpson, Thacher & Bartlett, New York City (Cyrus R. Vance, New York City, of counsel), for defendants Madison Square Garden Corporation and International Boxing Club of New York, Inc.

RYAN, District Judge.

The defendants Madison Square Garden Corporation and International Boxing Club of New York, Inc., have moved to amend the final judgment entered in this suit on July 2, 1957. The motion is addressed to Paragraph "21", which provides:

"21. Defendants International Boxing Club, Inc., an Illinois corporation, and International Boxing Club of New York, Inc., a New York corporation, are hereby ordered immediately to take appropriate steps to cause their dissolution in accordance with the laws of their respective states of incorporation."

The motion as originally made sought modification of the final judgment (1) by eliminating the requirement of dissolution of International Boxing Club of New York, Inc., and by substituting a provision requiring a change of name from International Boxing Club of New York, Inc., to either Madison Square Garden Boxing Club, Inc., or Madison Square Boxing, Inc., and by amending Paragraphs 15 and 22 of the judgment to conform to the modifications[1]; or, in the alternative (2) by eliminating the requirement of dissolution of I.B.C.–N.Y. and substituting in its place a provision requiring a change of name from I.B.C.–N.Y. to Madison Square Garden Iceland Corporation, and enjoining that corporation from ever promoting any professional boxing contest. At the hearing on the motion, the first request was withdrawn and we have before us, therefore, only an application for the alternative relief.

A provision of the final judgment directed the defendants Norris and Wirtz to sell all their stock in the Madison Square Garden Corporation. After affirmance of the judgment by the Supreme Court (358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270), this Court, on February 19, 1959, approved the sale of the Norris and Wirtz stock to Graham-Paige Corporation. The ground urged to justify the relief sought is that as of August 15, 1959, I.B.C.–N.Y. had an operating deficit of approximately $218,000, which would be lost for federal income tax purposes if I.B.C.–N.Y. is dissolved. We have assumed, for the purposes of this motion, that this is the fact.

This tax loss, we are informed, accrued during the fiscal year ended May 31, 1959 and during the period from June 1, 1959, to August 15, 1959. The President of Graham-Paige has testified that, when he negotiated to buy the Norris and Wirtz stock, he knew there was an outstanding final anti-trust judgment requiring dissolution of I.B.C.–N.Y., and that, although he had examined some financial statements of corporations related to Madison Square Garden, he was not aware of this loss in I.B.C.–N.Y. The negotiations to purchase the Garden stock took place on January 28 and 29, 1959. He further testified that the first time Graham-Paige learned of the tax loss was two or three days after on February 19, 1959, when the transfer was approved by this Court.

The following testimony was also given by him:

"Q. Do you mean that when you discussed the financial operations of I.B.C. with Mr. Wirtz you were just interested in history, what their average had been over a course of years? A. As far as I.B.C. was concerned, it was a minor influence in our interest in buying the Garden."

The Supreme Court in United States v. Swift & Co., 1952, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999, has stated the criteria to be considered on an application to modify a final anti-trust decree:

"No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hard-

1. Par. 15 enjoined defendants Norris and Wirtz and Madison Square Garden Corporation from jointly promoting professional boxing contests; Par. 22 enjoined I.B.C.—N.Y. and I.B.C.—Illinois, pending their dissolution, from promoting any professional championship boxing contest.

ship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation  *  *  * ".

We cannot say that the situation here represents a "hardship so extreme and unexpected" as to make Graham-Paige a "victim of oppression", or that "a grievous wrong" has been the result of "new and unforeseen conditions".

■ It must be borne in mind that the real parties in interest on this motion are Graham-Paige and the other stockholders of Madison Square Garden Corporation. They are not the defendants in this suit and the judgment addressed itself to correct wrongs committed by the named defendants. Rarely, if ever, may it be held that one neither a party to the suit, nor a beneficiary of the decree, has standing to seek a substantial modification of the final judgment reached by the Court after trial.

Prior to the entry of the final judgment, we expressed our views concerning the two I.B.C. defendants:

"These corporations are the promotional arms of the defendants, conceived and used to enable defendants to restrain and monopolize promotion of championship boxing contests. Their assets are of but nominal value except for the goodwill attaching to their names by virtue of the conspiracy."

On appeal, the Supreme Court, 358 U.S. 242, 79 S.Ct. 245, 255, 3 L.Ed.2d 270, concurred in the conclusion to decree dissolution because "the creation of the combination is itself the violation."

The tax loss accrued to I.B.C.–N.Y. after the entry of judgment and while it was continuing to operate pending appeal. The loss occurred while I.B.C.–N.Y. was continuing to engage in activities which had been found to be in violation of the anti-trust laws. This hardly

appeals to the Court as a basis for amending the final judgment.

Addressing attention to the argument by defense counsel concerning the tax problems created by the proposed judgment, on the hearing as to the scope of the relief to be provided for in the final judgment, we said:

"The Court: I don't attempt to regulate the tax problems of these defendants, but offhand it would seem to me to present no great difficult problem  *  *  *  It is a problem that has arisen because of wrongful acts and I cannot concern myself too much with it, if by concerning myself with it I make the decree ineffective."

This is still our view.

■ The decree was carefully fashioned to deal with the specific violations found to exist. Dissolution of I.B.C.–N.Y. was not only an integral part of the relief required by the evidence, but was a vital and essential provision of the judgment. The tax loss, accruing after entry of the final judgment, is an inconsequential development in view of the ends sought to be accomplished and the ending of the unlawful monopolization of professional championship boxing contests.

When Graham-Paige purchased the Garden stock from Norris and Wirtz, it was aware of the outstanding final judgment and of the particular terms and provisions of the judgment requiring dissolution of I.B.C.–N.Y. By that time, the directors of the Garden had already initiated action to dissolve I.B.C.–N.Y. Graham-Paige gave little or no consideration to I.B.C.–N.Y. in deciding to purchase the Garden stock. To modify the final judgment under these circumstances would amount to granting Graham-Paige and the other holders of the Garden stock relief at the expense of the integrity of the Court's final judgment. This cannot be made the justification for the modification sought.

Motion denied; so ordered.